**EXHIBIT A**

## Master Distributor Agreement

This Distributor Agreement (the "Agreement") is made and entered into as of the 11 day of October, 2005 (the "Effective Date"), between onAclick, Inc., d/b/a SAT Systems, a Nevada corporation with its principal office at 1325 Automotive Way, Reno, Nevada 89502, (hereinafter "SAT"), and Parrot, Inc., a New York corporation with its principal office at 150 West 25th Street, Suite 505, New York, New York 10001 (hereinafter "Parrot").

WHEREAS, Parrot is in the business of designing, engineering and manufacturing Blue-Tooth enabled car kits, satellite tracking devices, telematics devices and other automobile after-market products, including specifically the standard CK3500 product; and

WHEREAS, SAT desires to become a master distributor of the current automotive vehicle tracking telematic device known as CK3500 and any aftermarket automotive vehicle tracking telematic device (the "Product") in the United States in connection with its plan to offer an on-call service center installed in vehicles; and

WHEREAS, SAT desires to initially purchase from Parrot 100,000 units of the Product as hereinafter provided; and

WHEREAS, Parrot has agreed to grant to SAT the right to market, distribute and sell the Product in the United States on the terms and conditions hereinafter provided.

NOW, THEREFORE, in consideration of the above, and other good and valuable considerations, the receipt and sufficiency of which are mutually acknowledged, the parties agree as follows:

1. **Recitals.**  The foregoing recitals are true and correct and are hereby made a part hereof.

1

*SAT Intials* _____  *Parrot Intials* _____

2. **Appointment**. Subject to the terms and conditions of this Agreement, including but not limited to the obligation of SAT to pay to Parrot the sum of $70,000.00 for the PTCRB and FCC approvals for the Product (the "Required Approvals"), Parrot hereby appoints SAT as a master distributor of the Product (as further described on <u>Exhibit "A"</u>) in the United States of America (hereinafter the "Territory"). Distributor shall use its best efforts to market, advertise and promote vigorously the sale of the Product through the Territory. SAT may engage subdistributors to serve the customers in the Territory as part of its operation. Parrot reserves the right to require pre-approval of any subdistributor who sells outside of the vehicle dealership market and/or 12 volt market that can be reasonably recognized as a consumer electronics retailer or distributor. Parrot will not unreasonably withhold its approval.

3. **Term**. The term of this Agreement shall commence as of the Effective Date and shall continue until October 31, 2006 ("Initial Term"). This Agreement may be renewed for additional one year terms upon the written request of SAT made no later than 60 days prior to the expiration of the then-current term. During such 60 day period, the parties will review the terms and conditions of their working relationship and Parrot will determine, in its sole discretion, if an additional one year term will be granted to SAT. During the Initial Term and any subsequent term, the parties will be subject to the termination provisions in Section 16 below and subject to minimum purchase requirements to be agreed upon between the parties from time to time.

4. **Approvals**. SAT agrees to pay to Parrot the sum of $70,000.00 on or before October 15, 2005 to defer all or a portion of the costs and expenses to be incurred by Parrot to obtain the Required Approvals for the Product. Parrot shall submit documents for the Required Approvals within five (5) business days after the following occur (i) this Agreement is signed by both parties; and (ii) SAT has delivered a letter of credit to Parrot to secure the payment of $70,000, which is issued by a bank that is acceptable to Parrot. Parrot will use

its best efforts to obtain such approvals. Parrot's sole liability for any failure to obtain any one or both of such approvals shall be limited to the $70,000 amount paid to Parrot by SAT. Parrot will also apply for approval from Cingular but will not be responsible for any delay in or failure to obtain such approval. Parrot will use its best efforts to submit requested documents to obtain Cingular approval.

5. **Samples/Demos; Manual**. Within two (2) weeks after the effective date of this Agreement, at no cost to SAT, Parrot shall deliver to SAT five (5) working demo racks comparable to the rack displayed by Parrot at the meeting of the parties in Florida during the week of August 1, 2005, and shall also provide to SAT an electronic version of its standard manual. Parrot must pre-approve in writing any edits or changes to its standard manual.

6. **Purchase and Sale of Product**.

    a.     **Quantity**.     Purchase orders shall be placed by SAT as follows:

    (i)     A purchase order for 10,000 of such units shall be placed by SAT by November 15, 2005 (the "Initial Order").

    (ii)     An additional 20,000 units of Product shall be ordered by December 31, 2005.

    (iii)     An additional 10,000 units of Product shall be ordered by April 1, 2006.

    (iv)     An additional 10,000 units of Product shall be ordered by May 1, 2006;

    (v)     An additional 10,000 units of Product shall be ordered by June 1, 2006;

    (vi)     An additional 10,000 units of Product shall be ordered by July 1, 2006;

(vii)    An additional 10,000 units of Product shall be ordered by August 1, 2006;

(viii)    An additional 10,000 units of Product shall be ordered by September 1, 2006;

(ix)    An additional 10,000 units of Product shall be ordered by October 1, 2006;

(x)    A letter of credit from a bank acceptable to Parrot must accompany each purchase order, as set forth in Paragraph 8.

The order schedule set forth above in subparagraphs (i) – (ix) above may be delayed one day for each day the Required Approvals are delayed beyond December 31, 2005.

Variances in production quotas must be mutually agreed to in writing at least 90 days prior to the manufacture date and Parrot agrees to work with SAT to put proper forecasting in place if larger quantities of Product are needed.    On the terms and conditions herein provided, SAT agrees to purchase from Parrot not less than 100,000 units of Product during the Initial Term of this Agreement.    Parrot agrees to manufacture and sell to SAT 100,000 units during the Initial Term of this Agreement.    Quantities over 100,000 units during the Initial Term will be subject to mutual agreement.

b.    **Price**.    The purchase price of each unit of Product is $210.00.    This price is contingent upon SAT ordering the Product in the minimum quantities and at the times set forth in this Paragraph 6.    All prices are in U.S. Dollars, F.O.B. the Parrot shipment center in Dallas, Texas.    Prices shall be effective for shipments of Product ordered through October 31, 2006, and are thereafter subject to change by Parrot at any time in its sole discretion on 60 days' written notice.

c.    **Credits**.    Provided SAT has paid Parrot the sum of $70,000 as set forth in Paragraph 4 above, Parrot shall provide a credit to SAT in the total sum of $70,000, which will be applied to the Initial Order. Credits will be made *pro rata* at the rate of $7 per unit with the invoices for the Initial Order.

d.    **Discounts**.    If the Required Approvals are received after February 28, 2006, SAT will receive a 2% discount off the total price of the Products ordered in the Initial Order.

e.    **Delivery**.    Product deliveries will be made as follows:

(i)    Delivery of the Initial Order will be made on or before February 15, 2006.

(ii)    Delivery of the Product ordered pursuant to Paragraph 6(a)(ii) will be made on or before March 15, 2006 for 10,000 units and on or before March 31, 2006 for 10,000 units.

(iii)    Product ordered pursuant to Paragraph 6(a)(iii) will be delivered on or before April 30, 2006.

(iv)    Product ordered pursuant to Paragraph 6(a)(iv) will be delivered on or before May 31, 2006

(v)    Product ordered pursuant to Paragraph 6(a)(v) will be delivered on or before June 30, 2006.

(vi)    Product ordered pursuant to Paragraph 6(a)(vi), will be delivered on or before July 31, 2006.

(vii)    Product ordered pursuant to Paragraph 6(a)(vii), will be delivered on or before August 31, 2006.

5

*SAT Intials* _____    *Parrot Intials* _____

(viii)    Product ordered pursuant to Paragraph 6(a)(viii), will be delivered on or before September 30, 2006.

(ix)    Product ordered pursuant to Paragraph 6(a)(ix), will be delivered on or before October 31, 2006.

All purchase orders will be accompanied by the letter of credit required by Paragraph 6(a)(x) and Paragraph 8.

If Parrot's delivery of some or all of the Initial Order is delayed for more than two weeks beyond the appropriate delivery date (unless for reasons beyond Parrot's control, such as a "Force Majeure", defined below), Parrot will grant SAT a 2% discount from the price of those number of units the delivery of which has been so delayed.

For purposes of this Agreement, a "Force Majeure" is any delay or failure in Parrot's performance of its obligations under this Agreement if and to the extent caused by occurrences beyond Parrot's reasonable control, including but not limited to, decrees or restraints of governments, acts of God, acts of terrorism, strikes, walk-outs or other labor disturbances affecting the delivery of supplies or raw materials, failure of a supplier to deliver supplies or raw materials due to no fault of Parrot, refusal of a government entity or other third party to grant required approvals (including the Required Approval), civil commotion, sabotage, or other similar causes beyond Parrot's reasonable control; provided, however, that Parrot shall promptly notify SAT in writing of the nature and expected duration of such Force Majeure.

Notwithstanding anything to the contrary herein, no delivery of Product will be made until Parrot has received the Required Approvals. The delivery schedule set forth above in subparagraphs (i) – (ix) above will be delayed one day for each day the Required Approvals are delayed beyond December 31, 2005, and SAT shall have the right to delay the orders

referred to in subparagraphs ii-ix above one day for each day the Required Approvals are delayed beyond December 31, 2005.

f.    **Orders**.  All purchase orders will specify the number of units to be shipped, the unit price, the destination, and any special shipping instructions.  Parrot will attempt to notify SAT in writing of its acceptance or rejection of a purchase order within ten (10) business days of receipt of such order via facsimile or e-mail.  Parrot's acceptance of any purchase orders will not constitute acceptance of any terms therein that will conflict or vary from the terms and conditions of this Agreement or of any invoice or other document delivered by Parrot in connection with the sale. Notwithstanding anything herein to the contrary, Parrot's liability for any breach of this Agreement for failure to fulfill orders for the quantities of the Product ordered in accordance with the above provisions shall be limited to the lesser of the (a) the actual cost of cover (i.e., the difference between the Product purchase price set forth herein and the price of the substitute product procured by SAT); or (b) the purchase price of the units that are not delivered.  In no event shall Parrot be liable to SAT for any incidental or consequential damages, including but not limited to lost profits.

7.  **Sole Distributor.**  Provided SAT places orders for the Product in the quantities and at the times and in the manner (including its proof of the required letter of credit) set forth in Paragraph 6 above and otherwise observes the provisions of this Agreement, Parrot agrees that SAT shall be the sole authorized distributor of the Product in the Territory through the Initial Term. After the end of the Initial Term, or such earlier date if SAT fails to comply with Paragraph 6, or this Agreement is otherwise terminated by Parrot pursuant to Paragraph 16, Parrot shall be free to sell the Product and any new version or modification of the Product directly or through distributors, and SAT shall no longer hold itself out as the sole distributor of the Product. Notwithstanding the foregoing, Parrot is prohibited from distributing the

Product directly to AutoNation, Inc., Dealer Specialties network of dealerships, JBS Technologies and any other client or partner with which Parrot had no previous relationship prior to engaging SAT and which became a Parrot customer due solely to SAT's active solicitation of it (the "Excluded Customers") for a period of one year after termination of this Agreement pursuant to the Nondisclosure Agreement between Parrot and SAT dated June 28, 2005 (the "NDA") and its Addendum dated June 29, 2005 ("Addendum") as modified by this provision. The parties agree that the Excluded Customers are or will be the only persons or entities introduced to Parrot by SAT and that Parrot is only precluded from distributing Product directly to the Excluded Customers. The parties agree that this Agreement supersedes the Addendum as it relates to Parrot and SAT (but not to KMH) and that any other customer contacts or distribution channels created or discovered are the collaborative efforts of the parties and were not obtained pursuant to the NDA or Addendum.

8. **Payment Terms**. Unless otherwise agreed in writing, payment for the Products shall be by a confirmed irrevocable letter of credit from a U.S. bank on such terms and conditions as the parties mutually agree. Parrot shall be entitled to draw against the letter of credit upon confirmation from the carrier shipping the Product that the order has been received at the destination indicated in each SAT purchase order. In any event, SAT shall be responsible for remitting payment to Parrot within 30 days after the date the Products are delivered to Parrot's Dallas, Texas shipment center and made available to SAT.

9. **Shipping and Delivery**. Delivery times specified in each purchase order are times of delivery of the Product at SAT's designated place of delivery or destination. All orders for the first 100,000 units will be shipped in accordance with the terms of Paragraph 6. SAT may reject and/or return at Parrot's expense any delivery of Product or part thereof that is substantially in excess of or less than the quantity specified in the purchase order, provided, in

each case, such objection or notice is made within three days of delivery. Unless instructed otherwise by SAT, Parrot shall for each purchase order placed hereunder: (i) ship the full amount of units in such purchase order; (ii) ship to the destination designated in such order in accordance with the specific shipping instructions set forth therein; (iii) ensure that all subordinate documents bear SAT's purchase order number; (iv) enclose a packing memorandum with each shipment and when more than one package is shipped, identify the one containing the memorandum; (v) mark SAT's purchase order number on all packages and shipping paper; (vi) render invoices in duplicate or as otherwise specified by SAT, showing SAT's purchase order number; (vii) render separate invoices for each shipment or order; (viii) forward bill of lading and shipping notices with invoices; (ix) invoice SAT by mailing or otherwise transmitting invoices, bills, and notice to the billing address on such order. In the absence of specified shipping instructions, Parrot will ship by the method it deems most advantageous exercising reasonable judgment to minimize the cost and time in transit to SAT. SAT will be responsible for all transportation, insurance and handling charges for Product delivered out of Parrot's shipment center in Dallas, Texas. At the time of each shipment, Parrot shall send to SAT, via e-mail or other method designated by SAT, a list showing the Product shipped by serial number. SAT may elect to have Parrot postpone delivery of any Product, and, if SAT so elects, Parrot shall store such Product for SAT for up to 60 days past the designated delivery date for such Product, at a storage charge to SAT of one-half of one percent (1/2%) of the invoice cost of the Product stored per month, prorated for any period of less than one (1) month. Parrot will inform SAT promptly of any occurrence which will or is expected to result in any delivery date or in any quantity not specified in the purchase order and Parrot shall also inform SAT of corrective measures which Parrot is taking to minimize the effect of such occurrence. Parrot will have no liability with respect to such stored Product. In no event will Parrot store more than 1,000 units of Product at one time.

10. **Packaging and Labeling**. Unless otherwise agreed in writing, Product shall be shipped in Parrot's standard packaging (standard or white box). When special packaging is requested, the cost will be agreed upon by the parties and will be invoiced. Each unit of Product shall have affixed thereto a manufacturing lot number. Parrot shall affix a bar code on each package containing the beacon serial number, the IEMI number, the radio VIN number and the purchase order number. The parties may agree in writing to affix such labels, trademarks, trade names and brand names to the Products as requested by SAT from time to time. SAT reserves the right to request Parrot to install a FedEx label machine at Parrot's facility (at no cost to Parrot) so that Parrot can place a FedEx label on the packaging. In such event, SAT shall be responsible for data entry for the labels.

11. **Inspection**. All Product received are subject, at SAT's option, to SAT's inspection subsequent to arrival at SAT's premises or the delivery destination. Product shall be deemed accepted by SAT if Parrot is not notified in writing of defect within seven days after SAT's receipt of delivery. Parrot agrees to replace or, at its sole discretion, issue a credit for all Product verified by Parrot as defective, provided Parrot receives notification of the claimed defect within the period set forth herein. SAT's failure to notify Parrot of a defect under the seven-day period referred to above shall not affect Parrot's warranty obligations described below

12. **Warranty**. All sales to SAT shall be subject to Parrot's standard warranty in effect at the time of shipment, a copy of which will be provided to SAT within 30 days of the date of this Agreement. SAT may make Parrot's warranty available to customers in connection with sales of the Products; provided, however, that such Products have not in any way been altered by or at the direction of SAT or any dealer and provided further that such Products are installed and used in strict conformity with Parrot's installation instructions and specifications. In any event, Parrot's standard warranty shall extend to SAT for a period of 18 months from the date of shipment of Product from

France. SAT agrees that it shall not in any way alter the Products (nor the parts or components thereof) without the prior written authorization of Parrot, nor extend any warranty nor make any representations other than those contained in Parrot's then current warranty. Any warranty given by SAT with respect to the Products that have been altered without prior authorization or any such additional warranty or representation shall be void. Notwithstanding the foregoing, SAT will make no warranty regarding the Product in connection with any automobile interface modules, installations, call center, call response, navigation or other telematic service offered by SAT, and SAT assumes full responsibility and liability for such services. Parrot shall maintain in its distribution center in Dallas, Texas an inventory of 2% of the total orders of SAT to cover warranty replacement obligations. THE FOREGOING WARRANTIES ARE EXCLUSIVE AND IN LIEU OF ALL OTHER EXPRESS AND IMPLIED WARRANTIES WHATSOEVER, INCLUDING BUT NOT LIMITED TO IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE AND THOSE ARISING OUT OF COURSE OF DEALING OR USAGE OF TRADE.

13. **Limitation of Liability**. IN NO EVENT SHALL PARROT BE LIABLE TO SAT OR ANY PARTY CLAIMING THROUGH SAT FOR ANY SPECIAL, INCIDENTAL, INDIRECT, CONSEQUENTIAL OR CONTINGENT DAMAGES WHATSOEVER, INCLUDING WITHOUT LIMITATION LOSS OF PROFITS, INJURIES TO PROPERTY, LOSS OF USE OF THE PRODUCT OR ANY ASSOCIATED EQUIPMENT WITH RESPECT TO CLAIMS MADE BY SAT UNDER THIS AGREEMENT OR OTHERWISE OR BY ANY PURCHASER OR USER OF PRODUCTS, REGARDLESS OF THE FORESEEABILITY OF SUCH DAMAGES OR WHETHER PARROT WAS APPRISED OF THE LIKELIHOOD THEREOF.

14. **Module Additions**. It is recognized that SAT contemplates the addition of a module or modules to the Product, to enable the Product to perform remote

vehicle door and ignition functions. Parrot reserves the right to approve or disapprove the addition of any such modules. However, SAT assumes full responsibility to satisfy itself as to the proper functioning of such modules with the Product and assumes all liability with the functioning of such modules and their compatibility with the Product.

15. **Harnesses**. Parrot will use its best efforts to assist SAT in obtaining harnesses to connect the Product to U.S. vehicles, but will not be liable to SAT for the unavailability of harnesses, it being the responsibility of SAT to ensure the availability of harnesses and their compatibility with the Product. All such harnesses shall be purchased directly by SAT from the appropriate harness supplier. Failure to obtain such harnesses shall not affect SAT's obligations under this Agreement.

16. **Termination**. This Agreement may be terminated as follows:

    a.  by either party, without cause, upon 60 days' prior written notice, after the initial 100,000 units of Product are delivered;

    b.  by either party immediately upon a material breach of the other party's obligations under this Agreement, provided that the non-breaching party has given written notice of such breach to the breaching party and, further, that such breach has not been cured within 30 days of the breaching party's receipt of such written notice; or

    c.  by either party immediately and without notice at any time if the other party is declared bankrupt or insolvent, makes an assignment for the benefit of creditors, or if a receiver is appointed or any proceedings are commenced, voluntarily or involuntarily, by or against the other party under any bankruptcy or similar law.

    d.  by Parrot immediately in the event SAT acts as a distributor, a representative, or in any other capacity for an entity reasonably deemed by Parrot to be selling Bluetooth-enabled or similar

technology products that compete with Parrot's Bluetooth-enabled products.

Upon termination of this Agreement: (i) Parrot's obligation to ship Product for which SAT has placed orders and secured with the required letter of credit with Parrot prior to the termination of this Agreement, and SAT's obligation to pay for such Product, shall not be affected; and (ii) SAT shall cease to be Parrot's distributor for the Product.

17. **Covenants, Representations and Warranties of Parrot.** Parrot hereby covenants, represents and warrants to SAT as follows:

    a.    Parrot has the right, power and authority to enter into this Agreement and perform its obligations hereunder.

    b.    The Products will not infringe on the patents, copyrights, trademarks, or other intellectual property rights of any third party.

18. **Intellectual Property.** Parrot will provide to SAT a list of all patents related to the Product within two (2) weeks following the Effective Date. Parrot grants to SAT, during the term of this Agreement, a non-exclusive, fully paid-up license to use Parrot's trademarks, trade names, brand names, and other product identifications used by Parrot with respect to the Product (the "Intellectual Property") only upon the prior written approval of Parrot solely in further of SAT's efforts to market, distribute and sell the Product for use in the Territory. Such license shall terminate immediately upon termination of this Agreement. The Intellectual Property shall, at all times, remain the property of Parrot, and SAT shall acquire no property interest or ownership in the Intellectual Property by virtue of this Agreement. SAT shall not, without Parrot's prior consent, use for any purpose other than implementation of this Agreement, any know-how, specifications, sales manuals and other information relating to the sale of the Parrot Products or any patent, trademark or copyright of Parrot. SAT agrees to cooperate with and assist Parrot in the

protection of patents, trademarks and copyrights owned by Parrot and shall inform Parrot immediately of any infringements or other improper action with respect to such patents, trademarks and copyrights brought to the attention of SAT. SAT may affix its private label to Products distributed by SAT with Parrot's prior review and written approval.

19. **Indemnification.** Each party ("Indemnifying Party") will indemnify and hold harmless the other party and its affiliates, and their respective owners, officers, directors, employees and agents (the "Indemnified Parties") from and against any and all claims, demands, actions, causes of actions, losses, damages, costs and expenses (including but not limited to court costs, expenses and attorney's fees incurred by the Indemnified Parties in defending or contesting any such claim) arising out of or relating to: (a) any claim of personal injury, death, or property damage caused by the negligence or intentional misconduct of the Indemnifying Party, its employees or agents; or (b) by a breach by the Indemnifying Party of any of its covenants, representations or warranties hereunder.

20. **Insurance.** Each party (the "Insuring Party") shall procure and maintain insurance, in amounts and coverage reasonably acceptable to the other party (but no less than $3,000,000 U.S. dollars combined single limit for bodily injury, death and property damages) at the Insuring Party's sole expense, with reputable and financially responsible insurance companies, insuring against any and all public liability, including injuries or death to persons and damage to property, arising out of or related to the Products or the Insuring Party's performance hereunder and shall furnish to the other party certificates of memoranda of such insurance and renewals thereof signed by the issuing company or agent or other information respecting such insurance at any time promptly upon the other party's request. Such policies will provide that they will not be canceled or modified without 30 days' written notice to the other party. Each party shall be named as an additional insured on the other party's insurance policy.

SAT Intials _____   Parrot Intials _____

21. **Confidentiality**.  The parties have previously executed the NDA, the terms and provisions of which are hereby incorporated herein by reference, subject to the provisions of Paragraph 7 of this Agreement and provided further that references to Nevada or Washoe County, Nevada in paragraph 7(d) of the NDA are hereby amended to reflect the state of Delaware throughout.

22. **Modified and Successive Versions of the Product**.  Parrot may, in its sole discretion, make design changes in the Product while this Agreement is in effect, provided that such changes do not materially change its user specifications for the Product, as set forth in Exhibit A hereto.

23. **Entire Agreement**.  This Agreement and the exhibits attached hereto constitute the entire agreement and understanding of the parties hereto relating to the subject matter hereof and supersedes all previous and contemporaneous agreements, oral or written.  This Agreement may only be modified by an instrument in writing signed by an authorized representative of both parties.

24. **Governing Law/Venue**.  This Agreement is a contract made under, and shall be governed by and construed in accordance with, the laws of the State of Delaware without regard to its choice of law principles.  Each of the parties agrees that any legal or equitable action or proceeding with respect to this Agreement or entered into in connection with this Agreement or transactions contemplated by this Agreement shall be brought only in any court of the State of Delaware, or in any court of the United States of America sitting in Delaware, and each of the parties submits to any accepts generally and unconditionally the jurisdiction of those courts with respect to such party's person and property, and irrevocably consents to the service of process in connection with any such action or proceeding by personal delivery to each party at such party's address as set forth above, or in any other manner set forth in this Agreement.

25. **Severability**.  If any of the provisions of this Agreement shall be invalid or unenforceable in any jurisdiction in which this Agreement is being performed,

such invalidity or unenforceability shall not invalidate or render unenforceable the entire Agreement, but rather the entire Agreement shall be construed as if not containing the particular invalid or unenforceable provision or provisions, and the rights and obligations of Parrot and SAT shall be construed and enforced accordingly.

26. **Notices**.  All notices, requests, demands, consents and other communications required or permitted under this Agreement shall be in writing (including telex and telegraphic communication) and shall be (as elected by the person giving such notice) hand delivered by messenger or courier service, telecommunicated, or mailed (airmail if international) by registered or certified mail (postage prepaid), return receipt requested, addressed to the appropriate party at its address set forth above or to such other address as that party may designate by notice complying with the terms of this Section. Each such notice is deemed delivered: (a) on the date delivered if by personal delivery; (b) on the date of transmission, with confirmed answer back if by telefax or other telegraphic method; or (c) on the date upon which the return receipt is signed or delivery is refused or the notice is designated by the postal authorities or courier service as not deliverable, as the case may be, if mailed or couriered.

27. **Assignability**.  Neither party will assign this Agreement without the consent of the other party.

28. **Binding Effect**.  This Agreement shall be binding upon and inure to the benefit of the parties hereto, their successors and assigns.

[Signatures on following page]

*3395142v.12 24460/102109*                    16       SAT Intials _____  Parrot Intials _____

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first indicated above.

onAclick, Inc.

By: _____

Title: _____

Date: _____

Parrot, Inc.

By: _____
        EDWARD VALDEZ

Title: ___PRESIDENT & C.O.O.___

Date: ___10/11/2005___

EXHIBIT A

PRODUCT

The Product is described more fully in the User Manual described below, the terms of
which are hereby incorporated herein:

| Prepared | Title | | |
|---|---|---|---|
| Gilbert Zanditenas | User manuel CK3500 Telematic | | |
| Approved | Date | Revision | File |
| Guillaume Poujade | 22/06/05 | 1.0 | User manuel CK3500 Telematic |

**EXHIBIT B**



We put Bluetooth® in your car

March 28, 2006

Wayne Jones
Senior Vice President
SAT Systems
1325 Airmotive Way #175
Reno, NV 89502

Re    SAT Systems (OnAClick) ("SAT") purchase of SAT3500 unit ("Product")
        from Parrot, Inc. ("Parrot")

Dear Wayne,

You have indicated that SAT intends to purchase the Products and apply the following application-specific functions to the Products through third-party providers: (i) static GPS filtering and (ii) Cingular's public APN that will allow Mobile Terminal Initiated Access (auto-connect on port 143) (the "Functions"). In addition, there are two features which are not now available yet planned to be available on the next firmware version  1) radio auto-muting on internal SIM voice services and 2) the beacon automatically reconnecting in a timely fashion after a mode change.  Parrot will ship approximately 1500 units of the Product during March in return for SAT's acknowledgement of the following

a    The Products do not contain the Functions or the Parrot features cited above.

b    SAT will accept the Products " without the functions."  Upon successfully completing the installation of the "re-flashing" Pro-Line Services will invoice Parrot at the price of $2.50 USD per Unit for applying the features to the Products, starting upon RC11 QA release scheduled for 30 March 2006.

c    Parrot assumes all responsibility for any warranty claims based on the successful installation of the features into the Products, excluding travel and lodging incurred by Pro-Line Services  in installation of the RC-11_7 .

This letter sets forth terms and conditions that are in addition to the provisions set forth in the Master Distributor Agreement between Parrot and SAT and Parrot's General Terms and Conditions. The Master Distributor Agreement and Parrot's General Terms and Conditions remain in full force and effect, as modified by this letter. Parrot will include Firmware solutions in the next order of 8500 for the following: (i) static GPS filtering. Parrot will also make its best effort to provide future firmware upgrades in the course of the normal product life cycle

Please indicate your acceptance to the additional terms and conditions set forth in this letter by signing and returning a copy of the letter to me. You are welcome to keep a duplicate copy of this letter for your records

Sincerely,

Edward Valdez
President & COO
Parrot Inc

ACCEPTED AND AGREED

SAT Systems (OnAClick)

Wayne Jones
By
Its     Senior Vice President

Date    March 29, 2006

9442 N. Capital of Texas Highway, Arboretum Plaza One, Suite 500
Austin, Texas 78759